***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion of award, except for minor modifications. Accordingly the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and the subject matter.
2. Defendant-employers regularly employ three or more employees and are bound by the North Carolina Workers' Compensation Act. An employer-employee relationship existed between plaintiff and defendant-employers Care Focus and Health Management Associates, respectively, on June 18, 2001, and January 30, 2003, the dates of injury. *Page 3 
3. The carriers on the risk at the time of the alleged injuries were Constitution State Services and Liberty Mutual.
4. Defendant-employer Health Management Associates and its carrier Liberty Mutual accepted plaintiff's left knee injury as compensable after the January 30, 2003, injury, and those defendants have been paying ongoing temporary total disability benefits and providing employee with medical treatment as to the left knee injury.
5. Plaintiff's average weekly wage for defendant-employer Health Management Associates was $954.00, which yields a compensation rate of $636.03 per week. Plaintiff's average weekly wage at defendant-employer Care Focus was $692.30, yielding a compensation rate of $461.53 per week.
6. Employee has not worked from May 8, 2003, to the present and continuing.
7. The parties stipulated into evidence Stipulated Exhibit #1, a notebook containing medical records, Industrial Commission forms, and discovery.
8. The depositions of Dr. Robert Wilson, Leslie Phillips, Ph.D., Dr. Todd Beedle, and Dr. Thomas Weber were received into evidence following the hearing before the Deputy Commissioner.
 ***********
Based upon all the competent evidence of record and the reasonable inferences arising therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born January 12, 1949 and is a high school graduate. She received an Associates Degree in nursing from Vance-Granville Community College and is a registered nurse. *Page 4 
2. Plaintiff began working for defendant-employer Care Focus as a nurse manager in November 1999. She worked there until June 2002 when she accepted a position as a home health nurse for defendant-employer Health Management Associates.
3. In October 1997, plaintiff injured her back and neck while lifting a patient at Maria Parham Hospital. She had surgery on her neck and received an impairment rating of 15% to her spine. She was injured again in January 1998 when a combative patient kicked her in the chest and chin at Maria Parham Hospital. She was injured yet again in November 1998 in her low back and right shoulder while restraining a combative patient at Maria Parham Hospital.
4. On June 18, 2001, while working at Care Focus in Durham, plaintiff stepped into an indented area in a newly repaved parking lot. Her immediate symptoms were to her left knee, groin and left lower back. The insurance carrier for Care Focus, Constitution State Services, accepted the claim as compensable. Most of the care plaintiff received for those injuries was at Triangle Orthopaedic Associates. The knee and groin injuries eventually healed.
5. In a discogram performed February 7, 2002, Dr. Robert Wilson, a physiatrist at Triangle Orthopedic Associates, found that plaintiff had two painful or symptomatic discs at L3-4 and at L4-5. Dr. Wilson also found annular tears at L3-4 and L4-5. Plaintiff's back pain continued to worsen until Dr. Wilson performed an IDET procedure on plaintiff at Granville Medical Center on March 13, 2002.
6. Following the IDET procedure, plaintiff experienced significant improvement in her back pain. However, she was instructed to not return to a job that would require her to sit or drive too much as that would damage the disc again. Therefore, plaintiff did not return to her job with Care Focus as it required a significant amount of driving. *Page 5 
7. Plaintiff began employment with Health Management Services on June 10, 2002. Plaintiff informed Health Management Services of her prior workers' compensation injuries from which she was recovering. The job at Health Management Associates consisted of driving to the patients' homes, performing admission and discharge from home health services, changing dressings, teaching, administering IV medication, and other nursing duties.
8. On August 22, 2002, Dr. Wilson recommended a trial of chiropractic care as he felt that much of plaintiff's back problems were coming from stiffness and facet joint pain. Plaintiff was referred to Dr. Todd Beedle, a chiropractor in Louisburg.
9. Dr. Beedle first saw plaintiff on August 29, 2002. On that date, plaintiff was suffering with left knee, right groin, mid and low back pain from 76 to 100 percent of the day. Dr. Beedle diagnosed a facet syndrome, lumbosacral subluxation, muscle spasm, muscle stiffness, and subluxation complex. Dr. Beedle's chiropractic treatment was successful, and plaintiff would like to return to Dr. Beedle for more treatment.
10. On January 9, 2003, Dr. Wilson performed facet injections in plaintiff's low back. Following the facet injections, Dr. Wilson did not see plaintiff again until February 27, 2003.
11. On January 30, 2003, while working for Health Management Services in a patient's home, plaintiff missed a step in a poorly lit hallway. She injured both knees, the left more than the right, and aggravated her low back such that the pain was worse by the next day. Plaintiff reported the injury to her supervisor, Lydia Moose, and went to the emergency room at Franklin Regional Hospital. Although the medical records from that visit mention only knee pain, the Full Commission finds that, based upon the credible evidence of record, plaintiff also experienced back pain as a result of this accident of January 30, 2003. *Page 6 
12. Plaintiff saw Dr. Beedle for an unscheduled appointment on January 31, 2003, and she reported to him that she had re-injured her back on the previous day. Dr. Beedle confirmed that her back was different on examination than it had been the prior visit. Plaintiff required more frequent visits with Dr. Beedle following her fall on January 30, 2003. Plaintiff's back pain was so severe on some days that Dr. Beedle could not perform adjustments but could only do soft tissue and physical therapy modalities.
13. It was Dr. Beedle's opinion, and the Full Commission finds as fact, that the compensable accident of January 30, 2003, materially aggravated plaintiff's back condition. The aggravation of plaintiff's low back pain caused by the January 30, 2003, fall lasted at least as long as Dr. Beedles's period of treatment, which ended May 2, 2003.
14. Plaintiff's back pain continued to worsen following her January 30, 2003, accident. Her job duties for Health Management Services also increased her low back and knee pain because she was required to ride in her car and twist in and out of her car to see patients.
15. In or near April 2003, plaintiff began to suffer from depression and stress. In a meeting with her supervisor in March, 2003, plaintiff was informed that she would be terminated on June 10, 2003. Although plaintiff had been putting forth her best effort, as a result of her severe chronic pain, she was getting further behind in her work. The pain was coming from both her knee and her back. She had been taking an increasing amount of pain medications, and the pain was also causing sleep deprivation, which in turn affected plaintiff's job performance.
16. Although plaintiff had other stressors in her life, the biggest source of her stress was the threat of losing her job and being unable, because of her pain and injuries, to obtain other employment. Plaintiff was a single mother and was not receiving child support from the child's father at the time. *Page 7 
17. On April 28, 2003, plaintiff went to Dr. Thomas Weber regarding back pain and situational anxiety that had to do with the loss of her job. Dr. Weber is board certified in family medicine and has been in private practice for 15 years. He had been plaintiff's primary care physician for at least 10 years at the time of his deposition.
18. At the April 28, 2003, visit with Dr. Weber, plaintiff was experiencing anxiety, change in sleep pattern, depression, loss of appetite, headaches, poor memory, inability to concentrate, and high blood pressure. Each of these symptoms was related to plaintiff's situational anxiety and depression. Plaintiff also reported to Dr. Weber the January 30, 2003, accident which she said had made her back pain worse. Dr. Weber stated at his deposition that the fall on January 30, 2003, aggravated plaintiff's preexisting back pain.
19. On May 6, 2003, Dr. Weber wrote plaintiff out of work for her back pain and depression because plaintiff was not able to function in her job. Dr. Weber found plaintiff's depression to be so serious that he referred her to Holly Hill, an inpatient mental health facility, for evaluation.
20. According to Dr. Weber, stress can amplify body pain, and body pain can worsen symptoms of anxiety, stress, and depression. Plaintiff's back and knee pain and her worry about losing her job were significant causative factors in the development of her depression and situational anxiety. If plaintiff's depression pre-existed either of the two injuries at issue in this case, plaintiff's bodily pain and worry about her job loss aggravated that depression to a reasonable degree. Both anxiety and depression are aggravated by chronic pain and financial stress. Dr. Weber also treated plaintiff for high blood pressure resulting from the January 30, 2003, injury by accident. Plaintiff's high blood pressure and psychological problems, including depression and anxiety, are the natural result of the aggravated back and knee pain resulting from her January 30, 2003, injury by accident. *Page 8 
21. On May 8, 2003, Dr. Wilson took plaintiff out of work completely for her increasing back pain as well as for her stress and depression issues relating to the inability to do her job. At that point, plaintiff's pain, in conjunction with her stress and depression, caused her to be totally disabled from work.
22. Dr. Wilson referred plaintiff to Dr. Leslie Phillips, a certified pain psychologist. Dr. Phillips examined plaintiff for one visit, on June 5, 2003, at which time plaintiff acknowledged distress and anxiety as well as being discouraged by her future, inability to take pleasure in life, indecision, decreased self-esteem, decreased energy, sleep disturbance, appetite disturbance, decreased concentration, ease of fatigue, and decreased libido.
23. Plaintiff had been on anti-depressant medications. The termination of her job was an additional source of stress, and her stress and depression were a significant impairment of her functional capacity. The Oswestry Disability Index placed plaintiff in the "severe" range of self-perceived disability, secondary to pain. Plaintiff was pessimistic about her ability to return to her previous position as a home health nurse. Dr. Phillips stated that plaintiff had a high level of psychophysiological reactivity as evidenced by her irritable bowel syndrome and other symptoms.
24. It was Dr. Phillips' opinion, and the Full Commission finds as fact, that plaintiff's psychological status was contributing significantly to her disability and that plaintiff's pain was a significant causative factor of her depression. Plaintiff was a good candidate for psychological intervention, and she suffered from pain disorder associated with both psychological factors and a general medical condition, and adjustment disorder with depressed mood. Plaintiff's conditions were caused by her "current psychosocial stressors having to do with occupational problems, pain and *Page 9 
associated impairment of functioning." The body pain associated with this impairment of functioning included plaintiff's neck, back, mid-thoracic, and knee pain.
25. The psychological treatment Dr. Phillips recommended for plaintiff was cognitive behavioral treatment to change her pain related beliefs. Plaintiff would also have received benefit from a psychiatric consultation.
26. Neither insurance carrier in this case has authorized another visit to Dr. Phillips. Plaintiff would like to return to Dr. Phillips for further evaluation and care, and plaintiff's desire to do so is reasonable.
27. Plaintiff has not worked since May 8, 2003; however, neither carrier paid temporary total disability compensation until August 20, 2003, when Liberty Mutual began to pay plaintiff $636.03 per week. Liberty Mutual then retroactively paid plaintiff from July 11, 2003, the date Dr. Wheeless wrote plaintiff out of work for her knee pain, and Liberty Mutual continues to pay plaintiff temporary total disability compensation.
28. It was Dr. Wilson's opinion that the symptoms and the back pain plaintiff was experiencing on February 27, 2003, were simply a continuation of the symptoms and pain resulting from her June 18, 2001, injury. Dr. Wilson felt that plaintiff would have told him in the February 27, 2003, office visit if she had had another accident that had worsened her low back pain. Dr. Wilson also felt that if plaintiff needs future back surgery it would be related to the June 18, 2001 injury.
29. Dr. Wilson acknowledged that it is common for a knee injury to affect a person's gait such that it aggravates a pre-existing back problem, and as such, it is possible that plaintiff's knee injury of January 2003 aggravated her low back problem. Even though Dr. Wilson could not blame all of the problems plaintiff was having on April 29, 2003, on the June 2001 accident, he was unable to assign *Page 10 
any percentage of contribution to plaintiff's ability to work to either of the compensable injuries at issue in this case.
30. The greater weight of the evidence shows that plaintiff's inability to work was causally related to the January 30, 2003, material aggravation of her original compensable back injury of June 18, 2001, in combination with her depression, stress, and situational anxiety. As the result of the combined back, neck, and knee pain and psychological problems plaintiff has been unable to earn wages in any employment since May 6, 2003.
31. Plaintiff has been examined by Dr. Liebelt, a back surgeon at Triangle Orthopaedic, who recommended lumber fusion surgery. Plaintiff wants Dr. Liebelt to perform the recommended surgery, and plaintiff's request is reasonable.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On June 18, 2001, plaintiff sustained an admittedly compensable injury by accident to her left knee and back, arising out of and in the course of her employment with defendant-employer Care Focus. N.C. Gen. Stat. § 97-2(6).
2. On January 30, 2003, plaintiff sustained an injury by accident to her left knee and back arising out of and in the course of her employment with defendant-employer Health Management Associates. This injury was a substantial and material aggravation of her previous low back and left knee injuries. As the natural result of the pain from the January 30, 2003 injury by accident, plaintiff *Page 11 
also sustained high blood pressure and psychological problems, including depression and anxiety. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff's back and left knee have not reached maximum medical improvement since the January 30, 2003, accident. Plaintiff is entitled to have defendant-employer Health Management Associates and its carrier Liberty Mutual pay medical expenses related to plaintiff's back injury, left knee pain, high blood pressure, and psychological condition which are reasonably incurred to lessen plaintiff's period of disability, effect a cure, and/or give relief of her symptoms. The approved medical treatment includes that provided by Drs. Wilson, Weber, Liebelt, Phillips, and Beedle. N.C. Gen. Stat. § 97-25.
4. Plaintiff's back injury, chronic back pain, left knee pain, high blood pressure, and psychological condition have rendered plaintiff disabled and unable to working any employment. N.C. Gen. Stat. §97-2(9). Plaintiff is entitled to have defendant-employer Health Management Associates and its carrier Liberty Mutual pay temporary total disability compensation from May 6, 2003, to the present and continuing until such time as plaintiff returns to work, or until so ordered by the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff's average weekly wage with defendant-employer Health Management Associates was $954.00, which yields a compensation rate of $636.03.
 *********** *Page 12 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees awarded below, defendant-employer Health Management Associates and its carrier Liberty Mutual shall pay to plaintiff temporary total disability compensation at the rate of $636.03 per week beginning May 6, 2003, and continuing until plaintiff returns to work or until further order of the Industrial Commission. Any sums that have accrued shall be paid in one lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under Paragraph 1 of this award is hereby approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the accrued compensation due plaintiff shall be deducted and paid directly to plaintiff's counsel in one lump sum. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
3. Defendant-employer Health Management Associates and its carrier Liberty Mutual shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injuries by accident on the date of January 30, 2003. Specifically, plaintiff is entitled to care and compensation for her low back, left knee, high blood pressure, depression, and anxiety. Drs. Wilson, Liebelt, Weber, Phillips, and Beedle are authorized as plaintiff's treating physicians.
4. Defendant-employer Health Management Associates and its carrier Liberty Mutual and defendant-employer Care Focus and its carrier Constitution State Services shall each pay one-half of the costs.
This the 23rd day of March, 2007.
 S/______________________________________ LAURA K. MAVRETIC COMMISSIONER
CONCURRING:
 S/______________________________________ PAMELA T. YOUNG COMMISSIONER
UNAVAILABLE FOR SIGNATURE:
 S/______________________________________ THOMAS J. BOLCH COMMISSIONER *Page 1